IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CECIL K. ROBERTS,                          *
                                           *
                    Plaintiff,             *
                                           *
vs.                                        *       No. 5:08CV00142 SWW
                                           *
PETE GEREN, Secretary of the Army, and     *
ROBERT GATES, Secretary of Defense,        *
                                           *
                    Defendants             *

## Memorandum Opinion and Order

Cecil K. Roberts  ("Roberts") brings this case under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*; and 42 U.S.C. § 1981, alleging race and disability discrimination.  He asserts a claim of retaliation  under the Whistleblower Protection Act, 5 U.S.C. § 2302, and a review of his removal pursuant to 5 U.S.C. §§ 7702-03.   Now before the Court is defendants' motion to dismiss and for summary judgment to which plaintiff responded and defendants replied.  After careful consideration, and for the reasons stated below, the Court determines that the motions should  be granted.

## Background

Roberts is a black male who was employed as a protective equipment worker in the Directorate of Chemical & Biological Defense Operations at the Pine Bluff Arsenal, a United States Army installation in Pine Bluff, Arkansas.  One of his job duties was to clean and sanitize protective masks and components.  He was subjected to dust and smoke in his work environment.  While at work on September 14, 2005, Roberts suffered a severe respiratory reaction requiring medical

attention.   After being tended to on the base, Roberts was taken to the emergency room at the

Jefferson Regional Medical Center.   He was released later that day.   According to the allegations

of his complaint, on September 20, 2005, Roberts reported safety violations to the Safety Office at

the Pine Bluff Arsenal.  Compl. at ¶ 10.

On October 3, 2005, Roberts' treating physician, Dr. Simmie Armstrong, diagnosed him with

acute bronchitis and said Roberts could return to work but not in the same environment.   Dr.

Armstrong recommended that Roberts work in an environment free of chemical fumes and dust.

Major Jon Jacobson, M.D., the Chief Medical Officer at the Pine Bluff Arsenal, concurred with Dr.

Armstrong's diagnosis.

Roberts says he attempted to return to work on October 4, 2005, but was unable to work in

the building to which he was assigned because of exposure to dust.   On October 4, 2005, Roberts

submitted a request for 32 hours of advance sick leave, which was granted by Dr. Phillip Vick,

director of the chemical and biological program.   Roberts was on sick leave or leave without pay

after his respiratory attack and did not return to work.

On December 15, 2005, the Army issued a notice of proposed removal stating that Roberts

was physically unable to perform the duties of his position.   The notice said Roberts was being

removed because he could not carry out the essential duties of his position without doing harm to

himself or others.   The Army said it could not offer Roberts an accommodation for his disability

because he could not perform the essential functions of his position with or without reasonable

accommodation, without endangering the safety of himself or others.   The notice said there was no

vacant position compatible with his qualifications and physical conditions to which he could be

assigned. The Army advised Roberts that he could submit additional medical documentation indicating he was able to perform the duties of his position, and that he was entitled to and encouraged to propose any other action that the Army might take to accommodate his handicapping condition. The Army advised Roberts that if his removal was effectuated and he was separated because of a disability, he would be eligible to apply for disability retirement.

Roberts made no official response to the proposed removal letter, and on January 11, 2006, the Army informed Roberts he would be separated for physical disability effective January 19, 2006. On February 21, 2006, Roberts filed an appeal of his removal with the Merit Systems Protection Board ("MSPB"). He did not file a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") concerning his removal. In his initial appeal to the MSPB, Roberts contended his removal was improper because it was based on a physical disability he developed as a result of his work environment. He alleged the Army gave him a Form CA-1 (traumatic injury) to complete instead of a Form CA-2, and thus his injury should have been reviewed over a period of time rather than a specific, traumatic injury. He also alleged his removal was due to unlawful disability discrimination.[1]

On April 12, 2006, Roberts filed his Pre-Teleconference Filing with the MSPB detailing that his removal was allegedly motivated by unlawful disability discrimination. He did not mention race discrimination or retaliation in his filing.

---

[1]Because Roberts raised an "otherwise appealable action" upon which the MSPB's jurisdiction could be invoked, *i.e.* his removal, pursuant to 5 U.S.C. § 7512, and because he alleged his removal was based, at least in part, on unlawful disability discrimination, his appeal was treated as a mixed case appeal. *See* 29 C.F.R.§ 1614.302.

On July 19, 2006, Roberts moved to dismiss his appeal without prejudice in order to process his disability retirement through the Office of Personnel Management ("OPM").  The motion was granted.  Roberts re-filed his MSPB appeal on January 12, 2007, but again moved to dismiss it pending a decision by OPM on his disability retirement.  The MSPB dismissed his appeal without prejudice on March 1, 2007.  On September 5, 2007, after the OPM denied his application for disability retirement, Roberts filed his mixed case appeal for the third time, raising disability and race discrimination and retaliation for whistle blowing activities as affirmative defenses to his removal.  Defs.' Mem. in Supp. of Mot. Dismiss/Summ.J., Ex, 6.  On October 26, 2007, Roberts withdrew his request for a MSPB hearing and requested a decision on the record.  *Id.*, Ex. 22.  In support of his appeal, Roberts submitted to the MSPB a letter dated November 9, 2007, stating he did not know that his position occasionally required the wearing of respiratory protective clothing or devices because he never wore or was issued any type of clothing or devices. Roberts said he "was never medically restricted from working in the protective equipment area," "could have carried out the essential duties" of his position, and "was physically able to perform the duties of [his] position." *Id.*, Ex. 21.

The MSPB administrative law judge ("ALJ") determined that the Army satisfied its burden to show Roberts was unable to perform his position and that Roberts failed to establish by a preponderance of the evidence that his removal was based on disability or race discrimination, or in retaliation for whistleblowing activity.  *Id.*, Ex. 1.  Roberts filed an appeal with the EEOC.  On April 17, 2008, the EEOC issued a decision, concurring with the MSPB's finding of no

discrimination.  *See* Attach. to Compl. On May 19, 2008, Roberts filed a *pro se* complaint in federal court.  He later retained counsel.

Defendants seek dismissal of Roberts' § 1981 claim because the United States has not waived sovereign immunity for claims under that statute.  They argue his Title VII and Rehabilitation Act claims against separate defendant Secretary of Defense Gates should be dismissed because the only proper defendant is the Secretary of the Army.  Defendants contend Roberts' remaining claims against the Army should be dismissed because he cannot establish a *prima facie* case of race or disability discrimination. In the alternative, defendants argue there is no genuine of issue of material fact that Roberts' removal was based upon legitimate, non-discriminatory reasons.

### Standard of Review

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.,* 107 F.3d 1297, 1303-04 (8th Cir.1997).  The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little,* 109 F.3d 432, 434 (8th Cir.1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief

that the plaintiff cannot prove what the complaint asserts.  A well-pleaded complaint may proceed

even if it appears that actual proof of those facts is improbable and that recovery is very remote and

unlikely.  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  A complaint cannot, however, simply leave

open the possibility that a plaintiff might later establish some set of undisclosed facts to support

recovery.  *Twombly,* 550 U.S. at 561.  Rather, the facts set forth in the complaint must be sufficient

to nudge the claims "across the line from the conceivable to plausible." *Id.* at 570.

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must

demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.

Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for

summary judgment, the non-moving party must "do more than simply show there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.,*

475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of her

pleading but must "come forward with 'specific facts showing that there is a genuine issue for

trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact

is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could

return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401

(8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light

most favorable to the party opposing the motion.  *Matsushita,* 475 U.S. at 587 (citations omitted).

"Although summary judgment is to be used sparingly in employment discrimination cases, it is

appropriate where one party has failed to present evidence sufficient to create a jury question as to

an essential element of its claim." *Arnold v. Nursing and Rehab. Ctr. At Good Shepherd, LLC,* 471

F.3d 843, 845-6 (8th Cir. 2006)(internal citation omitted).

**Discussion**

Defendants seek dismissal of Roberts' § 1981 claim and of his claims against separate

defendant Gates.  They move for summary judgment on his race and disability discrimination

claims and ask the Court to affirm the decision of the MSPB to remove Roberts from his

position.

**Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6)**

Defendants argue Roberts' § 1981 claim should be dismissed because it is barred by

sovereign immunity and because he fails to state a claim for relief.  A plaintiff bears the burden

of establishing a court's subject matter jurisdiction.  *Steel Co. v. Citizens for a Better*

*Environment,* 523 U.S. 83, 103 (1998).  "[T]he United States, as sovereign, is immune from suit

save as it consents to be sued ... , and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 38 (1980).

"The statute that effectively waives the sovereign immunity of the United States for Title VII

claims, 42 U.S.C. § 2000e-16, 'provides the exclusive judicial remedy for claims of

discrimination in federal employment.'" *Mathis v. Henderson*, 243 F.3d 446, 449 (8th Cir.

2001).          Furthermore, § 1981 'protects individuals only from discrimination

7

> carried out *under color of state, not federal law*.  Indeed, in 1991
> Congress amended § 1981 to include the stipulation that '[t]he
> rights protected by this section are protected against impairment by
> nongovernmental discrimination and impairment under color of
> State law.'  42 U.S.C. § 1981(c).  Since this amendment, the
> weight of judicial authority, has held that § 1981 does not protect
> against alleged discrimination under color of federal law.'

*Gerdes v. Chertoff*, No.4:08CV3246, 2009 WL 2351742, at *4 (D.Neb. July 24, 2009)(citations omitted).  The Court finds plaintiff's § 1981 claim must be dismissed  for lack of subject matter jurisdiction and, alternatively, for failure to state a claim.

Defendants move for dismissal of Roberts' Title VII and Rehabilitation Act claims against separate defendant Robert Gates, Secretary of the Department of  Defense.  They argue that separate defendant Pete Geren, Secretary of the Army ("the Army"), is the only proper defendant under Title VII and the Rehabilitation Act because he is the head of Roberts' employing agency.  Roberts agrees.[2]  The Court finds that Roberts' claims against separate defendant Gates should be dismissed.

**Motion for Summary Judgment**

Defendants move for summary judgment on Roberts' Title VII claim that the Army discriminated against him on the basis of race/color, arguing he cannot establish a *prima facie* case.  Defendants assert they are entitled to summary judgment on Roberts' Rehabilitation Act claim because he cannot establish a *prima facie* case.  Lastly, defendants argue the MSPB's decision to remove Roberts should be affirmed because he cannot establish that the action was based upon a prohibited personnel practice.   "When bringing a mixed case appeal in district

---

[2] *See* Pl's. Mem. in Supp. of Resp, p. 8.

court, the discrimination claim will be subject to a *de novo* trial, while the non-discrimination

claim will be reviewed on the administrative record created before the EEO office or the MSPB,

subject to the arbitrary and capricious standard." *Greenhouse v. Geren,* 574 F.Supp.2d 57,66

(D.C.Cir. 2008). *See also Crawford v. Runyon,* 37 F.3d 1338, 1340 (8th Cir. 1994)(in a mixed

case, the adverse agency action is reviewed on the administrative record, while the

discrimination claim is reviewed *de novo*).

**Title VII Race Discrimination Claim**

        Roberts contends the Army discriminated against him on the basis of race/color.  Because

there is no direct evidence of discrimination, the Court applies the framework provided by

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  To make a *prima facie* Title VII

discrimination case, Roberts must show that he (1) is within the protected class, (2) was qualified

to perform the job, (3) suffered an adverse employment action, and (4) has facts that give rise to

an inference of discrimination. *Takele v. Mayo* Clinic, 576 F.3d 834, 838 (8th Cir. 2009).  A

plaintiff may establish the fourth prong by producing facts that similarly situated employees, not

in the protected class, were treated differently.  *Id.*  If Roberts can establish a *prima facie* case,

the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory

reason for its action. *Id.*  If the defendant makes such a showing, Roberts must then demonstrate

by a preponderance of the evidence that the stated non-discriminatory rationale was a mere

pretext for discrimination. *Id.*

        Defendants assert that Roberts cannot establish he suffered an adverse employment action

when the Army did not transfer him out of Building 63-200, the building in which Roberts was

working when he became sick.  Defendants also argue Roberts cannot show that a similarly

situated employee who was not a member of his protected class was treated differently.

Roberts alleges that a white female became unable to work in Building 63-200 and she was accommodated by moving her to work in another building. *See* Compl. at ¶ 8. In support of his assertion, Roberts submits the affidavit of Sharon Pennington, who says she knows that several protective equipment workers became ill because of sensitivity to various chemicals, and that Vick and/or his chief, David Hudman, moved or reassigned such workers to other areas to accommodate their problems. She says one such person was a white female employee, Diane Bailey.[3] Pennington says she worked with Bailey on occasion, and that Bailey was offered a transfer to another building after she brought her problems with the testing smoke to the attention of her supervisors and Dr. Vick. Pl's. Statement of Undisputed Material Facts, Ex. 15. Roberts argues Pennington's statement supports his *prima facie* case of race discrimination. The Army argues the Court should disregard Pennington's affidavit because it is inadmissible hearsay, lacking in sufficient factual foundation, and is contradicted by the summary judgment record.

Rule 56(e)(1) of the Federal Rules of Civil Procedure requires an affidavit to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter stated." Pennington provides no source or support for her statement. She does not say how she knows Bailey made such a request or how she knows Bailey's move was because of a complaint about exposure to smoke. She does not state what knowledge she has of the truth of such a statement if it were made by Bailey. The Court finds Pennington's affidavit cannot be considered. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 462 (8th

---

[3]Pennington says the woman's name is Diane Barley. Roberts and others say her name is Diane Bailey. The Court will refer to her as Bailey.

Cir. 2007)(affidavits containing inadmissible hearsay cannot be considered).

Furthermore, according to Dr. Vick, Bailey never alerted him that she had any impairment that limited her work ability as a protective equipment worker and her eventual move to Building 10-020 was not an accommodation but the result of a competitive selection for a position in the Material Management Directorate.  Defs.' Notice of Filing Ex. 24.  Bruce Baddeley, Director of Material Management, said he hired Bailey for a position in his office and was never told by Bailey or anyone else that she had a breathing condition or disability.  Defs.' Reply to Pl's. Resp., Ex. 25.  Pennington also asserted she has worked in a number of areas, including Building 53-990, which are dust and smoke free.  Roberts testified, however, that boxes received in that building were covered with thick black dust.  *See* Pl's. Statement of Undisputed Material Facts, ¶ 31.

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris,* 550 U.S. 372, 380 (2007)(internal quotations and citations omitted).  The Court finds Roberts fails to establish a *prima facie* case of race discrimination.  He fails to produce evidence from which a reasonable jury could find in his favor and, therefore, his race discrimination claim should be dismissed.

**Rehabilitation Act Claim**

Roberts claims the Army violated the Rehabilitation Act when it failed to accommodate him and terminated his employment.  The Army asserts it is entitled to summary judgment because Roberts cannot establish he has a qualifying disability or that he could perform the essential functions of his job with or without accommodation.

The Rehabilitation Act prohibits the federal government from discriminating against the disabled or from failing to reasonably accommodate disabled employees.  29 U.S.C. §§ 791, 794. An employer's failure to make a reasonable accommodation is a separate form of prohibited discrimination under the Rehabilitation Act.  *Buboltz v. Residential Advantages, Inc.,* 523 F.3d 864 (8th Cir. 2008).  If a party makes a reasonable accommodation claim, he must initially establish each element of the *prima facie* case.  *Fenney v. Dakota, Minnesota & Eastern R. Co.,* 327 F.3d 707, 712 (8th Cir. 2003).  To establish a *prima facie* case of disability discrimination, a plaintiff must show that he was disabled; was qualified to do the essential job function with or without reasonable accommodation; and suffered an adverse action due to his disability.  *Buboltz,* 523 F.3d 864, 868 (8th Cir. 2008).

The Rehabilitation Act defines an individual with a disability as one who (1) has a physical or mental impairment that substantially limits one or more of such person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B).  Major life activities are those "that are of central importance to most people's lives."  *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198 (2002).  These include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. § 1630.2(i).  A substantial limitation exists if "an individual is significantly restricted as to the condition, manner or duration under which the

12

average person in the general population can perform the same major life activity." *Gretillat v. Care Initiatives,* 481 F.3d 649, 652 (8th Cir. 2008)(quotation omitted).

The Army argues Roberts fails to allege an impairment that affects a major life activity. Further, even assuming Roberts alleges his impairment affects the major life activities of "working" or "breathing," he does not establish a substantial limitation. Courts consider three factors in determining whether a party's condition is a "substantial limitation" on a major life activity: (1) nature and severity of the impairment; (2) duration or expected duration of the impairment; and (3) whether there is any permanent or long term impact from the condition. 29 C.F.R. §1620(j)(2). "Merely proving the existence of a physical impairment, without addressing any limitations on major life activities, is not sufficient to prove disability under the Act." *Cody v. CIGNA Health Care of St. Louis, Inc.,* 139 F.3d 595, 598 (8th Cir. 1998)(impairment that causes difficulties does not equate to a disability under the ADA if not "substantially limiting").

Roberts does not allege he cannot work, but only that he is limited from working around dust and smoke. His treating physician, Dr. Armstrong, diagnosed Roberts with broncho spasms and bronchitis. He stated Roberts should work only in an environment free from dust and chemical fumes. The Army's medical officer, Dr. Jacobson, concurred. Roberts fails to establish that he is precluded from a class or broad range of positions. *See Perkins v. St. Louis County Water Co.,* 160 F.3d 446 (8th Cir. 1998)(not substantially limiting when plaintiff failed to present evidence he could not perform his own job, much less a broad range of jobs).

Roberts' own medical documentation demonstrates his condition has receded such that it is no longer severe.[4] Dr. Armstrong said Roberts could return to work on September 30, 2005, but recommended that it be in a different environment. After the incidents on September 14, and October 4, 2005, Dr. Ali from the Jefferson Regional Medical Center performed a pulmonary function test on Roberts which indicated "a mild restrictive pattern with no significant response to bronchodilators. Defs.' Mem. in Supp., Ex 13. The pulmonary specialist, Dr. Campbell, who examined Roberts in December 2005 and February 2006, noted no acute process and normal heart and lung activity. *Id.,* Exs. 14, 15. Dr. Campbell questioned whether Roberts' claims of continued breathing problems were legitimate. *Id.*, Ex. 14. While Roberts disagrees with Campbell's statement, he offers no evidence to refute Campbell's opinion.

Further mitigating against finding that Roberts suffers from a qualifying disability for the major life activity of working is the fact that his affliction is alleviated once he leaves the aggravating job location. Roberts cannot show a significant limitation on his ability to work if both he and his doctors assert he can work, just not around smoke and chemical fumes. *See Schuler v. SuperValu, Inc.,* 336 F.3d 702 (8th Cir. 2003)(plaintiff not substantially limited where he could not show he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities"); *Perkins v. St. Louis County Water Co.,* 160 F.3d 446 (8th Cir. 1998)(not substantially limiting when plaintiff failed to present evidence he could not perform his

---

[4]While Roberts' post-removal medical documentation is relevant for the Court's determination as to whether his condition is sufficiently permanent or enduring to be a "substantial limitation," the relevant time for assessing whether Roberts was disabled is at the time of the alleged adverse employment action. *Samuels v. Kansas City Mo. Sch.Dist.,* 437 F.3d 797, 802 (8th Cir. 2006).

own job, much less a broad range of jobs).  At best, Roberts shows he is limited from the specialized tasks associated with his protective equipment worker position at the Pine Bluff Arsenal which is insufficient to constitute a substantial limitation on working.  *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 491-2 (1999)(inability to work a specialized job or particular job of choice is not enough to show a substantial limitation on working).

To the extent Roberts alleges his condition substantially limits the major life activity of breathing, the Court finds that Roberts' localized and limited breathing problem - problem flares up when working in the dust and fumes of warehouses - is not a substantial limitation on his overall breathing.  Further, Roberts admits that his condition is either resolved or treatable by medications and other ameliorative procedures.  *See Sutton*, 527 U.S. at 482-3 ("[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits 'a major life activity'.  To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not substantially limit 'a major life activity").  Dr. Campbell noted in his February 2006 examination that Roberts told him he thinks "his cough is considerably better and he thinks the shot helped."  Defs.' Mem. in Supp., Ex 14.  By his own admission, Roberts shows that any lasting impacts from the September 14, 2005, injury were alleviated, at least in part, by February 2006.

Even if the Court were to find there is evidence from which a jury could determine that Roberts is disabled under the Rehabilitation Act, there is no evidence that Roberts was otherwise qualified to perform his position with or without accommodations.

Roberts claims he could continue to work in his position as a protective equipment worker because there are other locations where he could be assigned that would not subject him to smoke or dust.  He admitted that testing gas masks is an essential element of his position, Pl's. Statement of Facts at ¶ 9, and that in the course of testing gas masks, he would be exposed to smoke.  *Id.* at ¶ 22.  He says that out of a ten-hour day, he would test gas masks for five to six hours.

Roberts alleges there are positions to which he could have been assigned, but he does not identify any position.  Compl. at ¶ 28.  During the MSPB proceedings, Roberts never identified a position to which he claims he could be transferred.  Defs.' Mem. in Supp., Ex 1.  In response to discovery, Roberts alleges he could have been accommodated by being assigned to any of the following functions: 1) working on M8A1 Automatic Chemical Agent Alarm; (2) working on the QD line; (3) testing microphones for the protective mask; (4) rinsing and drying protective masks; (5) working on the CPDEPMED tent; and (6) operating a forklift.  *Id.,* Ex 23.

None of the above are reasonable accommodations under the Rehabilitation Act.  All six are merely periodic sub-tasks of Roberts' protective equipment worker position.  What he terms as a "reasonable accommodation" is an attempt to strip various essential functions off his job description and only perform certain minor segments of his job in order to keep working.  *Id.,* Ex. 11.  *See Dargis v. Sheahan,* 526 F.3d 981 (7th Cir. 2008)(plaintiff not qualified because employer was not required to carve out some of the rotating functions of plaintiff's position in order to create a new position)' *Heaser v. The Toro Co.,* 247 F.3d 826 (8th Cir. 2001)(employer not required to reallocate essential functions of a plaintiff's job); *Chrysler Corp. v. Mann,* 561 F.2d 1282 (8th Cir. 1977)(cannot shift essential responsibilities to accommodate employee).  Every proposed "accommodation" offered by Roberts is merely an attempt to do only one part of his

overall protective equipment worker position to the exclusion of all the other segments of the position that would tale him in contact with dust or smoke.  Furthermore, Roberts could not perform the six tasks he lists without exacerbating his breathing condition because all the tasks are performed at the twelve warehouse locations that contain smoke and dust, and several of the tasks involve dust and chemical fumes.  Defs.' Mem. in Supp., Ex. 11.  Robert never submitted any information in response to his proposed removal that would indicate what jobs or accommodations would alleviate his breathing condition.  The evidence establishes there was no other position at the Pine Bluff Arsenal outside the chemical and biological defense program that Roberts could hold, for which he was qualified, that would satisfy his medical restrictions.  *Id.,* Ex. 12.

Because Roberts fails to come forward with evidence from which a reasonable finder of fact could determine he is disabled under the Rehabilitation Act, the Army is entitled to summary judgment on his claim of disability discrimination and failure to accommodate.

**Review of MSPB Decision**

Roberts challenges the decision of the MSPB to uphold his removal.  The MSPB found the Army established Roberts was physically unable to perform his position and Roberts failed to prove his removal resulted from disability or race discrimination, or retaliation   The Court reviews the MSPB's decision on Roberts' termination and, under 5 U.S.C. § 7703(c), must affirm unless the decision was arbitrary, capricious, an abuse of discretion, procedurally infirm, or not supported by substantial evidence.  The test requires only that the agency have a rational basis. *Grasso v. Internal Revenue Serv.,* 657 F.2d 224, 225 (8th Cir. 1981).  The adverse agency action is reviewed on the administrative record.  *Crawford v. Runyon,* 37 F.3d 1338 (8th Cir. 1994).

With respect to his non-discrimination claim, Roberts alleged that his termination was the result of alleged whistleblower disclosures about the smoke used in the gas mask testing procedures.  Defs.' Mem. in Supp., Exs. 1 & 6.  The MSPB found that even if Roberts could establish a *prima facie* claim of retaliation for whistleblowing, the Army showed by clear and convincing evidence that it would have removed Roberts notwithstanding the alleged protected activity.  *Id.,* Ex. 1.  The ALJ found that Roberts admitted he was unable to perform his position, and that Roberts applied for disability retirement on that basis.  The overwhelming record before the MSPB demonstrated that Roberts could not work around smoke, dust or chemical fumes.  The evidence shows Roberts could not perform his protective equipment worker position anywhere at the Pine Bluff Arsenal as all the locations would have subjected him to dust, smoke or chemicals. The Court finds the MSPB's decision regarding Roberts' removal should be affirmed because it was not arbitrary and/or capricious, was obtained in accordance with law and regulation, and was supported by substantial evidence.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion to dismiss and for summary judgment [docket entry 24] is hereby granted.  Judgment will be entered for defendants.

DATED this 8th day of April, 2010.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE